UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIONEL FREDERICK JOHNSON, JR., | Case No. 5:20-cv-2337-MWF (MAR) |
| Petitioner, | |
| v. | FINAL REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |
| RALPH DIAZ, | |
| Respondent. | |

This Final[1] Report and Recommendation is submitted to the Honorable Michael W. Fitzgerald, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.

## **SUMMARY OF RECOMMENDATION**

Petitioner Lionel Frederick Johnson, Jr. ("Petitioner"), with counsel, has filed a Petition for Writ of Habeas Corpus by a Person in State Custody ("Petition") pursuant to 28 U.S.C. § 2254 ("section 2254").  ECF Docket No. ("Dkt.") 1.  The Petition includes a single ground for relief:  (1) the trial court erred by denying

---

[1] The Court issues this Final Report and Recommendation to address Petitioner's Objections.  See Dkt. 28.

1   Petitioner's motion for a new trial, and the California Court of Appeal's rejection of

2   this claim was contrary to clearly established federal law.

3        For the reasons discussed below, the Court recommends:

4        (1) accepting this Report and Recommendation; and

5        (2) **DENYING** and **DISMISSING** this action; and

6        (3) directing Judgment be entered dismissing this action with prejudice; and

7        (4) **DENYING** a Certificate of Appealability.

8   II.

9   **PROCEDURAL HISTORY**

10  **A.    STATE COURT PROCEEDINGS**

11       On March 15, 2011, in a bifurcated proceeding, a Riverside County jury found

12  Petitioner guilty of driving under the influence and causing injury (Cal. Veh. Code §

13  23153(a)) ("Count One"); and driving with a blood alcohol level of .08 percent or

14  more and causing injury (Cal. Veh. Code § 23153(b)) ("Count Two").  Lodged

15  Document No. ("Lodg.") 1,[2] CT at 79–80, 163, 231, 238–39.  In addition, the jury

16

17  ──────────────────

18  [2] The Court's citations to Lodged Documents refer to documents lodged in support of
Respondent's Answer.  See Dkt. 21.  Respondent identifies the documents as follows:

19

20  **Documents from People v. Lionel Frederick Johnson, Jr., California Court of Appeal, Fourth
Appellate District, Division Two, Case No. E056878, California Superior Court, County of
Riverside, Case No. SWF029110:**

21      (1) Clerk's Transcript on Appeal, Volume 1 of 2 (pages 1–299), Lodg. 1 ("CT");

22      (2) Clerk's Transcript on Appeal, Volume 2 of 2 (pages 300–492), Lodg. 2 ("CT-1");
    (3) Reporter's Master Index (Lodg. 3);

23      (4) Reporter's Transcript on Appeal, Volume 1 of 3 (pages 1–248), Lodg. 4 ("RT");
    (5) Reporter's Transcript on Appeal, Volume 2 of 3 (pages 249–482), Lodg. 5 ("RT-1");

24      (6) Reporter's Transcript on Appeal, Volume 3 of 3 (pages 483–548), Lodg. 6 ("RT-2");

25      (7) Appellant's Opening Brief filed by Lionel Frederick Johnson, Jr., on January 28, 2013
    (Lodg. 7);

26      (8) Respondent's Brief filed on April 12, 2013 (Lodg. 8);
    (9) Appellant's Reply Brief filed by Lionel Frederick Johnson, Jr., on April 29, 2013 (Lodg.
    9);

27      (10) Opinion certified for partial publication filed on December 19, 2013 (Lodg. 10);

28      (11) Petition for Rehearing filed by Respondent on January 6, 2014 (Lodg. 11);
    (12) Order denying petition for rehearing filed on January 14, 2014 (Lodg. 12);

2

found Petitioner personally inflicted great bodily injury on one (1) victim (Cal. Penal

Code §§ 1192.7(c)(8), 12022.7(a)), and that, in the commission of the crime, he caused

---

**Documents from People v. Lionel Frederick Johnson, Jr., California Court of Appeal, Fourth Appellate District, Division Two, Case No. E061986, California Superior Court, County of Riverside, Case No. SWF029110:**

 (13) Clerk's Transcript on Appeal, Volume 1 of 1 (pages 1–2), Lodg. 13;

 (14) Reporter's Transcript on Appeal, Volume 1 of 1 (pages 17–19), Lodg. 14;

 (15) Appellant's Opening Brief filed by Lionel Frederick Johnson, Jr., on March 12, 2015 (Lodg. 15);

 (16) Respondent's Brief filed June 17, 2015 (Lodg. 16);

 (17) Appellant's Reply Brief filed by Lionel Frederick Johnson, Jr., on July 9, 2015 (Lodg. 17);

 (18) Opinion certified for partial publication filed on December 7, 2015 (Lodg. 18);

**Documents from People v. Lionel Frederick Johnson, Jr., California Court of Appeal, Fourth Appellate District, Division Two, Case No. E070242, California Superior Court, County of Riverside, Case No. SWF029110:**

 (19) Clerk's Transcript on Appeal, Volume 1 of 1 (pages 1–54), Lodg. 19;

 (20) Supplemental Clerk's Transcript on Appeal, Volume 1 of 1 (pages 1–9), Lodg. 20;

 (21) Reporter's Transcript on Appeal, Volume 1 of 1 (pages 1–121), Lodg. 21;

 (22) Appellant's Opening Brief filed by Lionel Frederick Johnson, Jr., on August 14, 2018 (Lodg. 22);

 (23) Respondent's Brief filed on October 12, 2018 (Lodg. 23);

 (24) Appellant's Reply Brief filed by Lionel Frederick Johnson, Jr., on October 30, 2018 (Lodg. 24);

 (25) Appellant's Supplemental Brief filed by Lionel Frederick Johnson, Jr., on November 2, 2018 (Lodg. 25);

 (26) Supplemental Respondent's Brief filed on November 21, 2018 (Lodg. 26);

 (27) Unpublished opinion filed on May 21, 2019 (Lodg. 27);

 (28) Petition for Rehearing filed by Lionel Frederick Johnson, Jr., on June 5, 2019 (Lodg. 28);

 (29) Order Modifying Opinion and Denying Petition for Rehearing [No Change in Judgment] filed on June 11, 2019 (Lodg. 29);

**Documents from People v. Lionel Frederick Johnson, Jr., California Supreme Court, Case No. S256632:**

 (30) Petition for Review filed by Lionel Frederick Johnson, Jr., on June 29, 2019 (Lodg. 30);

 (31) Order denying petition for review filed on August 14, 2019 (Lodg. 31);

**Documents from People v. Lionel Frederick Johnson, Jr., California Superior Court, County of Riverside, Case No. SWF029110:**

 (32) Amended Abstract of Judgment filed on September 19, 2014 (Lodg. 32);

 (33) Minute order dated January 24, 2020 (Lodg. 33); and

 (34) Second Amended Abstract of Judgment filed on January 29, 2020 (Lodg. 34).

See Dkt. 21-1 at 1–4.

injury to three (3) other victims (Cal. Veh. Code § 23558).  Lodg. 1, CT at 79–81, 231–32, 235, 258, 261, 263 266, 269, 272–73.[3]

In a subsequent proceeding, on November 18, 2011, the trial court found both that Petitioner had served a prior prison term (Cal. Penal Code § 667.5(b)) and that Petitioner had two (2) prior convictions that qualified as serious felonies (Cal. Penal Code § 667(a)), and strikes (Cal. Penal Code §§ 667(c), (e)(2)(A), 1170.12(c)).  Lodg. 1, CT at 81–82; Lodg. 2, CT-1 at 301.

Petitioner subsequently motioned for the release of juror information, which the trial court denied on May 25, 2012.  Lodg. 2, CT-2 at 398–409, 436.  On July 13, 2012, the trial court sentenced Petitioner to forty-one (41) years to life in state prison.  Lodg. 2, CT-2 at 454–55, 489.

**1.    First direct appeal – Case No. E056878**

Petitioner initially raised four (4) claims on direct appeal (Case No. E056878): (1) the trial court abused its discretion by refusing to disclose juror names and addresses to enable the defense to investigate alleged juror misconduct; (2) the trial court abused its discretion by refusing to dismiss at least one (1) of Petitioner's prior convictions that qualified as a strike; (3) the trial court erred by imposing more than one (1) enhancement based on Petitioner's infliction of great bodily injury on a single victim; and (4) Petitioner's forty-one-years-to-life sentence constituted cruel and unusual punishment under the United States and California Constitutions.  Lodgs. 7 at 2, 13, 21, 29, 35; 8 at 13–35; 9 at 5–17.

The California Court of Appeal, in an opinion certified for partial publication, rejected Petitioner's second and fourth claims and affirmed the judgment with respect to his convictions.  People v. Johnson, 222 Cal. App. 4th 486, 489, 499 (2013) (Johnson I); Lodg. 10 at 2, 26–36.  However, the court of appeal remanded the matter

---

[3] The Court's citations to the RT (Lodgs. 3–6) and CT (Lodgs. 1–2) use the pagination in those respective transcripts.  Besides citations to the RT and CT, all other citations to electronically filed documents refer to the CM/ECF pagination.

4

of Petitioner's motion to disclose juror information and further found that the trial court erred in imposing sentence on the great bodily injury enhancement. Johnson I, 222 Cal. App. 4th at 489; Lodg. 10 at 2–3, 20–26; 36–37. Accordingly, the court ordered reconsideration of the motion for a new trial, and resentencing if the trial court denied the disclosure motion or a motion for a new trial. Johnson I, 222 Cal. App. 4th at 489, 500; Lodg. 10 at 2–3, 5–25, 36–37. The California Court of Appeal denied Respondent's Petition for Rehearing on January 14, 2014. Lodgs. 11, 12. On September 12, 2014, the California Superior Court denied Petitioner's motion, stayed his three-year term for the great bodily injury enhancement, and resentenced him to thirty-eight (38) years to life in state prison. Lodg. 13, Clerk's Transcript on Appeal, Vol. 1 of 1, Case No. E0619986, at 1; Lodg. 32 at 1.

### 2.    Second direct appeal – Case No. E061986

Petitioner filed a second direct appeal, Case No. E061986, presenting a single claim: that the court of appeal's instructions to the trial court in the previous appeal, to consider on remand the credibility of the declarations in support of Petitioner's motion, were incorrect. Lodgs. 15 at 8–24; 16 at 9–14; 17 at 4–7. On December 7, 2015, the California Court of Appeal, in an opinion certified for partial publication, agreed that it erred in its previous instructions to the trial court and overruled its prior opinion, affirmed the judgment of conviction, reversed Petitioner's sentence, and remanded the matter for an evidentiary hearing on his motion for disclosure of jurors' identifying information. People v. Johnson, 242 Cal. App. 4th 1155, 1161–65 (2015) (Johnson II); Lodg. 18 at 2–3, 12–17, 18. The court of appeal also instructed that the superior court, on remand, re-impose Petitioner's original sentence if it denied his motion or the motion for a new trial. Johnson II, 242 Cal. App. 4th at 1165; Lodg. 18 at 18. On remand, on June 17, 2016, the superior court granted Petitioner's juror disclosure motion, but denied Petitioner's subsequent motion for a new trial on March 16, 2018. Lodg. 19, Clerk's Transcript on Appeal, Vol. 1 of 1, Case No. E070242, at 8–16, 19–20, 22–32; 36–41; 45–57; Lodg. 20 Supplemental Clerk's

1    Transcript on Appeal, Vol. 1 of 1, Case No. E070242, at 4–6; Lodg. 21, Reporter's

2    Transcript on Appeal, Vol. 1 of 1, Case No. E070242, at 122–127.

3              **3.       Third direct appeal – Case No. E070242**

4              Petitioner subsequently filed a third direct appeal, in Case No. E070242,

5    arguing the trial court's denial of his motion for a new trial based on allegations of

6    juror misconduct was in error, and that his trial counsel provided ineffective

7    assistance of counsel by waiting over a year to seek jurors' identifying information.

8    Dkt. 20-1 at 17; Lodgs. 22 at 12–44; 23 at 9–20; 24 at 4–9.   He also argued that the

9    state courts violated his due process by penalizing him for a delay mainly attributable

10   to judicial error, and that his case, in light of California Senate Bill 1393 ("Senate Bill

11   1393"), should be remanded to allow the trial court the opportunity to exercise its

12   discretion to strike his five-year enhancements.  Lodgs. 22 at 33–35; 25 at 7–15; 26 at

13   5–7.  On May 21, 2019, the California Court of Appeal rejected Petitioner's first

14   claim, and affirmed the judgment with respect to his convictions.  People v. Johnson,

15   No. E070242, 2019 WL 2182940, at *1, *3–7 (Cal. App. Ct. May 21, 2019) as

16   modified on denial of reh'g (June 11, 2019), review denied (Aug. 14, 2019) (Johnson

17   III);[4] Lodg. 27 at 2–3, 8–16, 17.  However, the court of appeal agreed that remand for

18   resentencing was appropriate in light of Senate Bill 1393 and reversed the judgment as

19   to Petitioner's sentence.  Johnson III, 2019 WL 2182940, at *1, *7–8; Lodg. 27 at 2–3,

20   16–17.

21             On January 24, 2020, on remand, the California Superior Court struck

22   Petitioner's prison prior enhancement and his two (2) prior serious felony

23   enhancements and resentenced him to a term of twenty-seven (27) years to life in

24   state prison.  Lodgs. 33; 34 at 1.

25   _____

26   [4] The California Court of Appeal denied Petitioner's petition for rehearing on June 11, 2019,
     however, the court of appeal ordered the first full paragraph on page 13 of its slip opinion be

27   modified in two (2) ways.  Lodgs. 28; 29.  Petitioner subsequently filed a petition for discretionary
     review in the California Supreme Court, renewing his first claim but removing his allegations of

28   ineffective assistance of counsel and a due process violation, which the supreme court denied on
     August 14, 2019 without comment.  Lodgs. 30 at 5–7, 12–40; 31.

**B.     FEDERAL COURT PROCEEDINGS**

On November 5, 2020, Petitioner filed the instant Petition for Writ of Habeas Corpus by a Person in State Custody ("Petition") pursuant to 28 U.S.C. § 2254 ("section 2254") asserting a single ground for relief:  (1) "[t]he trial court erred by denying petitioner's motion for a new trial, and the California Court of Appeal's rejection of this claim was contrary to the clearly established Supreme Court precedent established In re Winship, 379 U.S. 358 (1970), and Carter v. Kentucky, 450 U.S. 288 (1981)."  Dkt. 1-1 at 5–7.  On April 12, 2021, Respondent filed an Answer to the Petition.  Dkt. 20.  On April 23, 2021, Petitioner filed a Traverse to Respondent's Answer.  Dkt. 24.  The matter thus stands submitted and is ready to decide.

**III.**

**SUMMARY OF FACTS**

For a summary of the relevant facts, this Court relies on the California Court of Appeal's opinion in Johnson III:[5]

**A. *Events Leading up to the Motion for New Trial.***

A jury found [Petitioner] guilty of driving under the influence and causing injury (Veh. Code, § 23153, subd. (a)) and driving with a blood alcohol level of 0.08 percent or more and causing injury (Veh. Code, § 23153, subd. (b)). On each count, one enhancement for personally inflicting great bodily injury (Pen. Code, § 12022.7, subd. (a)) and three enhancements for causing injury to an additional victim (Veh. Code, § 23558) were found true. Two strike priors (Pen. Code, §§ 667, subds. (b)-(i), 1170.12), two prior serious felony conviction enhancements (Pen. Code, § 667, subd. (a)), and one 1-year prior prison term enhancement (Pen. Code, § 667.5, subd. (b)) were also found true. As a result, [Petitioner] was sentenced to a total of 41 years to life in prison, along with the usual fines, fees, and miscellaneous sentencing orders.

---

[5] Because this factual summary is drawn from the California Court of Appeal's opinion, "it is afforded a presumption of correctness that may be rebutted only by clear and convincing evidence." Moses v. Payne, 555 F.3d 742, 746 n.1 (9th Cir. 2008) (citations omitted).  Counsel for Petitioner relies on some of the appellate court's factual and evidentiary summaries.  See, e.g., Dkt. 1 at 8.  To the extent counsel has not explicitly relied on other factual representations in the opinion, the Court has independently reviewed the trial record and finds that the state court's factual findings are entitled to the presumption of correctness, which has not been rebutted.

[Petitioner] filed a posttrial motion for disclosure of jurors' personal information. The motion was based on declarations of [Petitioner's] mother and stepfather (the Livingstons), to the effect that, after the verdict, they had a conversation with three of the jurors. One of the jurors was crying; she indicated that at least half of the jurors had "raised the question if [Petitioner] is innocent why he didn't take the stand to defend himself." The trial court denied the motion.

[Petitioner] appealed, arguing, among other things, that the trial court erred by denying his motion for disclosure. We held that the trial court erred by overlooking the evidence that the jurors had discussed [Petitioner's] failure to testify. We remanded with directions to the trial court to reconsider the motion and to grant it, "unless it finds that the evidence that otherwise supports the motion is not credible."

On remand, the trial court found that the evidence was not credible; accordingly, once again, it denied the motion.

[Petitioner] appealed again, arguing that, in the first appeal, we erred by allowing the trial court to consider credibility. We agreed; we held that "in deciding whether to hold a hearing on a motion for disclosure of jurors' identifying information, the trial court must assume that the declarations supporting the motion are credible," and "we ... overrule[d] our previous opinion to the extent that it held otherwise." We remanded with directions to the trial court to (re)reconsider the motion.

On remand, the trial court held an evidentiary hearing; the Livingstons testified and essentially reaffirmed the contents of their declarations. The trial court then found good cause for disclosure. Four jurors had indicated that they did not want their information disclosed, but the trial court ordered disclosure as to the other eight.

### B. *The Motion for New Trial.*

[Petitioner] then filed a motion for new trial, on grounds including juror misconduct. The motion was supported by a declaration by Juror No. 9, who stated: "During the trial I and other jurors did in fact talk about [Petitioner] not taking the stand in his defense ...."

The trial court held an evidentiary hearing on the motion, at which six of the jurors testified. The other six could not be located or were otherwise unavailable.

Four of the jurors — Juror No. 4, Juror No. 6, Juror No. 8, and Juror No. 12 — did not remember any discussion of the fact that [Petitioner] did not testify. They could not say definitively that it did not occur; they simply did not remember one way or the other. Of these, Juror No. 4 admitted thinking about it — "I wondered, it did cross my mind, why the [Petitioner] did not testify." Juror No. 6, who had been the foreperson, was "sure" that, if anyone brought up something that he felt they were not supposed to discuss, he would have told them not to discuss it. He added: "It's something I would do. I can't say I ... remember doing it."

Two of the jurors, however — Juror No. 5 and Juror No. 9 — did remember at least some discussion of the fact that [Petitioner] did not testify.

Juror No. 5 was evidently the crying juror who had talked to the Livingstons. She testified, "We did discuss it while we were in deliberations ...." "[W]hoever was sitting next to me, ... we looked at each other and we just said, why didn't [Petitioner] stand up for himself and ... defend himself?" She did not remember whether any of the other jurors discussed it, and she did not remember it being discussed more than once.

In general, she testified, the foreman was "really good" about "bring[ing] everybody back to let's talk about ... the evidence ...." However, she did not remember him specifically steering them away from discussing [Petitioner's] failure to testify.

As a result of the discussion, after the verdict, she "f[elt] like maybe I made the wrong decision." She was "upset." She contacted defense counsel and asked if she could speak to the judge.

Juror No. 9 confirmed that [Petitioner's] failure to testify "was part of the discussion ...." "[I]t was just curiosity, ... we just wanted to know ... why he didn't take the stand." Only "a couple" of the jurors discussed it, though "everybody heard the topic being brought up." The discussion was "short" and not "in[ ] depth." When asked if the foreperson told them "not to discuss certain things," he said, "[H]e did give us the briefing when we went in there." However, he did not remember the foreperson saying "we shouldn't discuss this or that."

Johnson III, 2019 WL 2182940, at *1–3; Lodg. 27 at 3–8.

///

**IV.**

**PETITIONER'S CLAIMS FOR RELIEF**

Petitioner presents the following claim[6] for relief:  (1) the trial court erred by denying Petitioner's motion for a new trial, and the California Court of Appeal's rejection of this claim was contrary to clearly established federal law.  Dkt. 1-2 at 12.

**V.**

**STANDARD OF REVIEW**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant habeas relief on a claim adjudicated on its merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Clearly established Federal law" for purposes of § 2254(d)(1) consists of "the holdings, as opposed to the dicta, of th[e] [United States Supreme] Court's decisions" in existence at the time of the state court adjudication.  Williams v. Taylor, 529 U.S. 362, 412 (2000).  However, "circuit court precedent may be 'persuasive' in demonstrating what law is 'clearly established' and whether a state court applied that law unreasonably."  Maxwell v. Roe, 628 F.3d 486, 494 (9th Cir. 2010).

---

[6] In addition, Petitioner appears to have renewed, or at the very least referenced, both his juror misconduct claim, which he presented to the California Court of Appeal and to the California Supreme Court, as well as his ineffective assistance of counsel and due process claims, which he presented to the California Court of Appeal.  Dkt. 1-2 at 31–43.  Respondent's Answer directly addresses all three (3) of these claims.  Dkt. 20 at 4; 20-1 at 14.  However, Petitioner's Traverse clarifies that "[n]o claim of ineffective assistance of trial counsel has been presented to this [C]ourt," and that only "the present question of whether the standard used by the state courts to rebut the prejudice following the misconduct violated petitioner's fundamental constitutional rights" is at issue here.  Dkt. 24 at 5–7.  Petitioner further notes Respondent "addresses a question already resolved in the state courts — that misconduct in fact occurred[.]"  Id.  Accordingly, the Court does not address any of the subclaims Respondent identified in the Answer.

A state court decision rests on an "unreasonable application" of federal law for purposes of § 2254(d)(1) where a state court identifies the correct governing rule, but unreasonably applies that rule to the facts of the particular case.  Andrews v. Davis, 944 F.3d 1092, 1107 (9th Cir. 2019) (citing Williams, 529 U.S. at 407–08).  "It is not enough that a federal habeas court concludes 'in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' "  Id. (citing Lockyer v. Andrade, 538 U.S. 63, 76 (2003)).  "The state court's application of clearly established law must be objectively unreasonable."  Lockyer, 538 U.S. at 75.

Overall, AEDPA established "a difficult to meet ... and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt."  Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (internal citation and quotation marks omitted).  "That deference, however, 'does not by definition preclude relief.' "  Andrews, 944 F.3d at 1107 (citing Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)).

Where the last state court disposition of a claim is a summary denial, this Court must review the last reasoned state court decision addressing the merits of the claim under AEDPA's deferential standard of review.  Maxwell v. Roe, 628 F.3d 486, 495 (9th Cir. 2010); see also Berghuis v. Thompkins, 560 U.S. 370, 380 (2010); Ylst v. Nunnemaker, 501 U.S. 797, 803–04 (1991).

Here, on direct appeal in Case No. E070242, Petitioner raised the juror misconduct claim to the California Court of Appeal, which denied the claim in a reasoned decision on May 21, 2019, later modified on June 11, 2019.  Dkt. 20-1 at 17; Lodgs. 22 at 12–44; 23 at 9–20; 24 at 4–9; 27; 28, 29.  Petitioner subsequently filed a petition for discretionary review in the California Supreme Court, which was denied without comment on August 14, 2019.  Lodgs. 30 at 5–7, 12–40; 31.  Hence, the California Court of Appeal's May 21, 2019 opinion, later modified on June 11, 2019, stands as the last reasoned decision with respect to Petitioner's claim.  Accordingly,

Petitioner's claims will be reviewed under AEDPA's deferential standard of review for claims "adjudicated on the merits."  28 U.S.C. § 2254(d); <u>Richter</u>, 562 U.S. at 99.

## VI.

## DISCUSSION

## A.  PETITIONER IS NOT ENTITLED TO HABEAS RELIEF HERE AS THE STATE COURT'S DECISIONS WERE NOT CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW

Petitioner argues that the trial court erred in denying his motion for a new trial in light of juror misconduct and that the conclusions of the California Court of Appeal were contrary to clearly established federal law as set forth in <u>In re Winship</u> and <u>Carter v. Kentucky</u>.[7]  Dkts. 1-1 at 5; 1-2 at 12, 25.  Specifically, he contends that

---

[7] Petitioner's Objections state, in part, that "[t]he Report and Recommendation offers no analysis on the claim that the misconduct that occurred in this case violated petitioner's right to remain silent and not testify as described in <u>Carter v. Kentucky</u>[.]"  Dkt. 28 at 6.

In <u>Carter</u>, the petitioner sought relief after he requested, and was denied, a jury instruction at trial regarding his decision not to testify—specifically, that this decision could not be used as an inference of guilt and/or prejudice him in anyway.  <u>Carter</u>, 450 U.S. at 294.  In reversing the judgment, the Supreme Court explained that "[t]he freedom of a defendant in a criminal trial to remain silent 'unless he chooses to speak in the unfettered exercise of his own will' is guaranteed by the Fifth Amendment and made applicable to state criminal proceedings through the Fourteenth."  <u>Id.</u> at 305.  The Supreme Court held that "a state trial judge has the constitutional obligation, upon proper request, to minimize the danger that the jury will give evidentiary weight to a defendant's failure to testify."  <u>Id.</u>

Here, the jury **was** instructed—pursuant to CALCRIM No. 355—not to discuss Petitioner's decision not to testify or let it influence the jury's decision in anyway.  <u>See</u> CT at 185–86, 201; RT-1 at 417–18, 427.  Thus, the issue in <u>Carter</u>—whether a defendant who chooses not to testify is entitled to specific jury instructions—is not at issue here.

Though not entirely clear, Petitioner appears cite the Supreme Court's dicta in <u>Carter</u> to argue that the right to remain silent as described in <u>Carter v. Kentucky</u>, 450 U.S. 288 (1981), and somewhat unrelated law concerning standards of proof from <u>In Re Winship</u>, taken together, compel the conclusion that the state court's decision violated Petitioner's constitutional rights.  Dkt. 1 at 25–43.

However, Petitioner cites no Supreme Court or Ninth Circuit authority that have applied either <u>In Re Winship</u> or <u>Carter</u> in the way he is arguing, and this Court has found none.  In fact, Petitioner appears to concede in the Objections that these cases do not explicitly apply here.  Dkt. 28 at 6 ("<u>While Winship</u> **does not expressly state** that it applies in determining whether the prosecution has rebutted the prejudice caused by juror misconduct, **it should be found to apply…**" (emphasis

the burden of proof articulated in <u>In re Winship</u>—guilt established by proof beyond a reasonable doubt—must "be applied when the prosecution is attempting to rebut prejudice from juror misconduct."  Dkt. 1-2 at 25–26.

In the Traverse, Petitioner insists that the only issue before this Court is whether the state courts applied the proper standard in determining whether the presumed prejudice from juror misconduct was rebutted by the prosecution.  Dkt. 24 at 5–7.  However, out of an abundance of caution, the undersigned first addresses the underlying juror misconduct claim, before briefly addressing the standard of proof issue, as Petitioner describes.

**1.  Juror misconduct**

**a.  Background and state court decision**

The California Court of Appeal in <u>Johnson III</u> summarized the trial court's denial of Petitioner's motion for a new trial as follows:

> [The trial court] cited <u>People v. Solorio</u> (2017) 17 Cal.App.5th 398. <u>Solorio</u> had identified three factors to be considered in determining whether the presumption of prejudice had been rebutted: (1) "whether jurors drew adverse inferences of guilt from [Petitioner's] decision not to testify"; (2) "the length of discussion about the topic"; and (3) "whether jurors were reminded not to consider the [Petitioner's] decision not to testify."
>
> Regarding the first factor, the trial court said: "[Juror No. 5] did not indicate that there were negative inferences taken by herself or anyone else from that discussion." "[Juror No. 5] did mention something to the effect of we wished ... that we had heard from him. That is not the same as drawing a negative inference." "[The discussion] appeared to be ... limited between [Juror No. 5] and another juror. Maybe other jurors heard it, but there was no inference that that was discussed by anyone other than those two jurors." Likewise, Juror No. 9 did not provide "any evidence of negative inferences ...."

_____

added)).  AEDPA limits the scope of habeas review to whether a state court misapplied "clearly established federal law" or based their decision on an unreasonable determination of the facts.  28 U.S.C. § 2254(d).  Accordingly, regardless of whether <u>Winship</u> or <u>Carter</u> could or should compel the result Petitioner argues for, his argument cannot merit relief from this Court because these cases do not appear to represent clearly established federal law for the propositions Petitioner argues.

It added, "[W]e have an absence of any evidence that there were heated discussions about whether the [Petitioner] testified or not. The kind of thing that one would expect jurors might recall if there was further discussion about this topic."

Regarding the second factor, it said: "[Juror No. 5] said it was not a long discussion." "[T]he discussion ... occurred perhaps one time .... And it did not appear to go on at length." Juror No. 9 had similarly testified "that the discussion was very brief."

Regarding the third factor, it said: "[Juror No. 5] specifically remembered the jury foreperson getting them back on topic ... [a]nd the impression again from that is that the jury did so, they got back on topic."

The trial court concluded "that the presumption of prejudice has been rebutted ...."

Johnson III, 2019 WL 2182940, at *3 (citations and footnote omitted); Lodg. 27 at 7–8.  As a preliminary matter, the California Court of Appeal addressed Petitioner's argument regarding Evidence Code Section 1150, stating:

The trial court excluded part of Juror No. 9's declaration, based on Evidence Code section 1150.

The motion was also supported by a declaration by Juror No. 11. However, the trial court excluded all of Juror No. 11's declaration under Evidence Code section 1150.

In addition, the motion was supported by a declaration by Attorney Rich Pfeiffer, who had represented [Petitioner] in 2016. He related statements that one of the jurors had made to him. The prosecution objected to Pfeiffer's declaration, as hearsay and as inadmissible under Evidence Code section 1150. The trial court did not expressly rule on this objection.

Johnson III, 2019 WL 2182940, at *4; Lodg. 27 at 8–9.  The court of appeal continued:

Evidence Code section 1150, as relevant here, provides: "Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a

juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined."

" 'This statute distinguishes "between proof of overt acts, objectively ascertainable, and proof of the subjective reasoning processes of the individual juror, which can be neither corroborated nor disproved ...." [Citation.] " ... The only improper influences that may be proved under [Evidence Code] section 1150 to impeach a verdict, therefore, are those open to sight, hearing, and the other senses and thus subject to corroboration." [Citations.]' [Citation.]"

[Petitioner] disclaims any contention that the trial court misapplied Evidence Code section 1150. Rather, he argues that determining whether the jury misconduct was prejudicial includes consideration of whether the jurors drew an adverse inference from his failure to testify, yet Evidence Code section 1150 prevents him from presenting evidence of their subjective thought processes. He concludes that "[a]rguably, [Evidence Code] section 1150 creates an injustice ...." We, however, are not empowered to rewrite the Evidence Code.

Johnson III, 2019 WL 2182940, at *4 (citations and footnote omitted); Lodg. 27 at 9–10.

### b.    Applicable law

State criminal defendants have a federal constitutional right to a fair and impartial jury. See Duncan v. Louisiana, 391 U.S. 145, 149 (1968); Irvin v. Dowd, 366 U.S. 717, 722 (1961)).  Likewise, the Sixth Amendment's guarantee of a trial by jury requires that the jury base its verdict on the evidence presented at trial. See Turner v. Louisiana, 379 U.S. 466, 472–73 (1965); Ylst, 470 F.3d at 803.  However, even despite these protections for criminal defendants, a reviewing court may not inquire into a jury's deliberations concerning the evidence presented at trial. Id.; see Tanner v. United States, 483 U.S. 107, 126–27 (1987) (holding the Sixth Amendment did not require a court to conduct an evidentiary hearing at which jurors would testify regarding inadmissible deliberations).

Federal Rule of Evidence 606(b) ("Rule 606(b)")—which applies in federal habeas proceedings—bars consideration of juror testimony as to "any matter or

statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith."  Id.  There are two (2) exceptions whereby a juror may testify as to whether:  (1) "extraneous prejudicial information was improperly brought to the jury's attention" or (2) "any outside influence was improperly brought to bear upon any juror."  Fed. R. Evid. 606(b); Estrada v. Scribner, 512 F.3d 1227, 1237 (9th Cir. 2008) (applying Rule 606(b) in assessing whether the district court was correct that it could not consider portions of juror affidavits proffered by habeas petitioner challenging state conviction), cert. denied, 554 U.S. 925 (2008); Anderson v. Terhune, 409 Fed. Appx. 175, 178 (9th Cir. 2011), cert. denied, 565 U.S. 890 (2011) (Federal Rule of Evidence 606(b) governs admissibility of juror testimony in federal habeas proceedings (citations omitted)).

### c.    Analysis

Here, the only potentially relevant exception to the prohibition on using juror testimony to impeach a verdict is testimony involving the impact of extraneous information or matters on the jury's verdict—in this case, several jurors' consideration of Petitioner's decision not to testify.  See Fed. R. Evid. 606(b)(2); Mattox v. United States, 146 U.S. 140, 149 (1892) (holding that testimony of jurors describing how they heard and read prejudicial information not admitted into evidence was admissible to impeach verdict because testimony involved extraneous influence on jury's verdict).

While it does appear that two (2), or possibly three (3) jurors disobeyed the court's jury instruction and discussed the fact that petitioner did not testify, Johnson III, 2019 WL 2182940, at *1–3, the Ninth Circuit has held that a jury's discussion about a defendant's decision not to testify is "part of the trial, not extrinsic to it." Ylst, 470 F.3d at 803.  Thus, reviewing courts are unable to inquire into a jury's discussion of the defendant's decision not to testify and likewise unable to consider evidence of the same.  Id.; see also United States v. Rutherford, 371 F.3d 634, 640

(9th Cir. 2004) (Rule 606(b) bars consideration of jurors' statements that, during deliberations, they ignored trial court's instructions and discussed defendant's failure to testify).  Accordingly, the state court's rejection of Petitioner's juror misconduct claim was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court and cannot merit federal habeas relief.  As recounted by the state appellate court, the state trial court concluded, "the topic of the [Petitioner's] not testifying did come up. That is misconduct…. The question is, is it prejudicial?"  Johnson III, 2019 WL 2182940, at *3; Lodg. 27 at 6.

## 2. Standard of proof for rebutting the presumption of prejudice

### a. Background and state court decision

Regarding any prejudice from the juror misconduct, the California Court of Appeal opined that:

> " '[B]y violating the trial court's instruction not to discuss [Petitioner's] failure to testify, the jury committed misconduct. [Citations.] This misconduct gives rise to a presumption of prejudice, which "may be rebutted ... by a reviewing court's determination, upon examining the entire record, that there is no substantial likelihood that the complaining party suffered actual harm." ' [Citation.] ' "Whether prejudice arose from juror misconduct ... is a mixed question of law and fact subject to an appellate court's independent determination." ' [Citation.] 'However, "[w]e accept the trial court's credibility determinations and findings on questions of historical fact if supported by substantial evidence." ' [Citation.]"

> [Petitioner] argues that the prosecution should be required to rebut prejudice not merely by a preponderance of the evidence, but beyond a reasonable doubt. As he also concedes, however, Evidence Code section 115 provides that: "Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence." He cites no law holding that the prosecution must rebut the presumption of prejudice from jury misconduct beyond a reasonable doubt, and we have found none.

> In a criminal case, "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every

fact necessary to constitute the crime with which he is charged." Other facts, however, need only be proven by a preponderance.

We also note that, even assuming the beyond a reasonable doubt standard did apply, defendant could not show that the trial court erred. " '[A]n order is presumed correct; all intendments are indulged in to support it on matters as to which the record is silent, and error must be affirmatively shown.' [Citation.]" Here, the trial court did not specify what standard of proof it was using. Thus, [Petitioner] can hardly show that it used an erroneous one.

[Petitioner] also complains that, due to the passage of time, the six jurors who did testify had little recollection of their deliberations, and the other six jurors had become unavailable. He blames the delay on "repeated judicial error" — i.e., the trial court's erroneous denial of his motion for disclosure of personal juror information, along with our error in his first appeal in stating the standard for the consideration of that motion. It is not entirely clear, however, what he wants us to do about it (except, perhaps, to grant a new trial automatically — a remedy for which he cites no authority, and which we decline to adopt). Given that it was the <u>prosecution's</u> burden to <u>disprove</u> prejudice, it would seem that missing evidence and faded recollections would be more likely to handicap the prosecution than the defense.

[Petitioner] does not argue that the trial court erred by analyzing the testimony through the lens of the <u>Solorio</u>[8] factors. He does argue, however, that with respect to each of these factors, the trial court erroneously required him to prove prejudice, instead of requiring the prosecution to disprove prejudice.

The first factor is whether jurors drew an adverse inference of guilt from defendant's failure to testify. [Petitioner] points to the trial court's statement that Juror No. 5 and Juror No. 9 did not testify to drawing any

---

[8] Additionally, to the extent that Petitioner argues here that the state courts misapplied state law, Dkt. 1-2 at 34–43, specifically <u>People v. Solorio</u>, 17 Cal. App. 5th 398 (2017), this Court is bound by the state court's conclusions in applying <u>Solorio</u> to Petitioner's case.  See <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67–68 (1991) (explaining that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  Even if the appellate court misapplied <u>Solorio</u>, it would not provide Petitioner a cognizable avenue for federal habeas relief.  See <u>Wilson v. Corcoran</u>, 562 U.S. 1, 5 (2010) (highlighting that the United States Supreme Court has repeatedly held that "federal habeas corpus relief does not lie for errors of state law").

"negative inferences" as placing the burden of proof on him. The trial court, however, was careful to explain that, if the jurors did consider [Petitioner's] failure to testify to be material to guilt, it would be reasonable to expect them to remember that: "[W]e have an absence of evidence that there were heated discussions about whether the [Petitioner] testified or not. The kind of thing that one would expect jurors might recall if there was further discussion about this topic." It properly concluded that the prosecution met its burden by showing that the jurors did not recall any such discussion.

The second factor is the length of discussion about the topic. [Petitioner] argues that the trial court improperly found that the discussion was short only because "there was no evidence the comments were more than transitory ...." Not so. One juror affirmatively testified — as the trial court noted — that the discussion was "short." "[W]e didn't go into depth[,] it was just something that was briefly brought up." "It was so brief that I ... don't believe it was brought up more than once." Four other jurors did not even remember the discussion. "The fact that only a few jurors recall any comment on the topic may tend to 'indicate[ ] that the discussion was not of any length or significance.' [Citation.]"

The third factor is whether jurors were reminded not to consider the defendant's decision not to testify. [Petitioner] claims the trial court reasoned that "there was no evidence that the foreperson <u>did not</u> admonish the jurors ...." Again, not so. While the foreperson did not specifically remember admonishing the jury, he did testify that he was "sure" that he would have done so; "It's something I would do." Likewise, Juror No. 5 testified that "generally, the foreman would ... bring everybody back to let's talk about ... the evidence and move forward.... I remember him ... trying not to go on tangents." "He was really good at that." The trial court could reasonably conclude that, if the topic of [Petitioner's] failure to testify was discussed at all, the foreperson did admonish the jurors.

<u>Johnson III</u>, 2019 WL 2182940, at *4–6 (citations and footnote omitted) (emphasis in original); Lodg. 27 at 10–13.

The California Court of Appeal further explained that, even if the foreperson failed to admonish the jurors, any prejudice was rebutted because:

" ' "Transitory comments of wonderment and curiosity" about a defendant's failure to testify, although technically misconduct, "are normally innocuous ...." [Citation.]' [Citation.]" "It may often be the case,

though, that juror comments that go beyond mere wonderment and curiosity may need stronger affirmative evidence — such as a reminder of the court's instructions not to consider the forbidden topic — to show that prejudice does not exist."

The evidence here showed no more than such "transitory comments of wonderment and curiosity." Juror No. 5 described the discussion as asking "[W]hy didn't he stand up for himself and ... defend himself?" Juror No. 9 specifically described it as expressing "just curiosity." Neither of them recalled any statement that the jurors should draw an adverse inference from [Petitioner's] failure to testify. We conclude that such a discussion was "innocuous."

[Petitioner] also cites testimony from which the trial court arguably could have drawn different conclusions with respect to some of the <u>Solorio</u> factors. As already mentioned, however, we accept the trial court's findings on questions of historical fact, as long as they are supported by substantial evidence. This means the trial court's resolution of conflicts in the evidence is binding on us.

For example, [Petitioner] points out that Juror No. 8 remembered the foreperson admonishing the jury only once, about a different issue. The trial court, however, could have viewed this as supporting the other evidence that the foreperson <u>did</u> admonish the jury whenever it was necessary.

He also cites the testimony of Juror No. 9 that the discussion of [Petitioner's] failure to testify "wouldn't have even been five minutes [long]." [Petitioner] concludes that it may have been as long as five minutes. However, this did not contradict the evidence that the discussion was short. The trial court could reasonably find that it was only transitory. Similarly, he cites Juror No. 5's testimony that "the discussion about [Petitioner] not testifying" was "the reason why we reached the verdict of guilty ...." The trial court, however, cut her off at that point, saying, "I don't want you to go into that. We can't go into ... your mental processes ...." This testimony was inadmissible under Evidence Code section 1150; clearly the trial court knew that. Even in the absence of an objection, the testimony was irrelevant.

In the same vein, [Petitioner] cites the testimony of Juror No. 5 that "a lot of times," the jurors "brought the conversation back to let's just take a look at the evidence ...." [Petitioner] concludes that <u>the topic of him not testifying</u> must have come up "a lot of times." Juror No. 5 also testified,

however, that she could not remember what — if anything — the other jurors said about [Petitioner's] failure to testify. In context, she was speculating that they may have said that they should just look at the evidence, as this was said "a lot of times" about <u>other topics</u> during the deliberations.

<u>Johnson III</u>, 2019 WL 2182940, at *6–7 (citations and footnote omitted) (emphasis in original); Lodg. 27 at 13–16.

### b.    Applicable federal law

The Sixth Amendment guarantees every criminal defendant a right to an impartial jury.  <u>Duncan v. Louisiana</u>, 391 U.S. 145, 149 (1968).  The jury's verdict "must be based upon the evidence developed at the trial." <u>Turner v. Louisiana</u>, 379 U.S. 466, 472 (1965).  "In the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross–examination, and of counsel."  <u>Id.</u> at 472–73.

In <u>Smith v. Phillips</u>, the Supreme Court focused on the procedural steps the trial court must take when potential juror misconduct arises.  <u>Smith v. Phillips</u>, 455 U.S. 209 (1982).  The Constitution "does not require a new trial every time a juror has been placed in a potentially compromising situation." <u>Smith</u>, 455 U.S. at 217.  "Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." <u>Id.</u>  The trial judge can "determine the circumstances, the impact thereof upon the juror, and whether or not [they were] prejudicial, in a <u>hearing</u> with all interested parties permitted to participate."  <u>Id.</u> at 216 (quoting <u>Remmer v. United States</u>, 347 U.S. 227, 230 (1954)) (alterations in original).

The evaluation of claims of juror misconduct depends on whether the misconduct is based on extrinsic influences or intrinsic influences.  When the

1   misconduct stems from an extrinsic or external influence, prejudice is presumed

2   unless the government shows it was harmless.  See Remmer, 347 U.S. 228–29; Xiong

3   v. Felker, 681 F.3d 1067, 1076 (9th Cir. 2012) ("The presumption of prejudice that

4   arises from juror misconduct, although strong, is not conclusive; 'the burden rests

5   heavily upon the Government to establish after notice to and hearing of the

6   defendant, that such contact with the juror was harmless to the defendant.' " (quoting

7   Remmer, 347 U.S. 228–29).

8        Where the alleged misconduct involves influences or information internal or

9   intrinsic to the jury's deliberations, however, the situation is different.  King v.

10   Frauenheim, No. 14-CV-05267-SI, 2016 WL 4425093 (N.D. Cal. Aug. 19, 2016).

11        **c.    Analysis**

12        As an initial matter, as discussed above, the Ninth Circuit has repeatedly held

13   that a jury's deliberation on the fact that a defendant did not testify cannot support

14   habeas relief because, while misconduct, this fact is not extrinsic to the trial.  See, e.g.,

15   Ylst, 470 F.3d at 803; Rutherford, 371 F.3d at 640 (explaining that the district court

16   was correct to conclude that juror testimony regarding the defendant's failure to

17   testify was inadmissible because jurors learned of the defendant's "failure to testify

18   through their personal observations during trial, not through a prohibited route or

19   improper ex parte contact" and thus "does not concern facts bearing on extraneous

20   or outside influences on the deliberation.").  Accordingly, Petitioner is not entitled to

21   habeas relief on his juror misconduct claim because it concerns an intrinsic rather

22   than an extrinsic influence on the jury.

23        Petitioner asserts a rather novel argument here;[9]  he essentially argues that the

24   California Court of Appeal should have adopted a new standard of proof—proof

25   ────────────────

26   [9] Even assuming Petitioner's novel argument regarding the applicable standard of proof were
    successful, his claim faces another hurdle—courts have repeatedly held that the type of evidence at

27   issue here is not extrinsic evidence.  Thus, the presumption of prejudice for juror misconduct
    involving extrinsic evidence likely would not apply here. Therefore, Petitioner's claim would likely

28   fail regardless of which standard of proof is necessary to rebut the presumption of prejudice from
    juror misconduct.  Any argument such as Petitioner's here, concerning what the applicable standard

beyond a reasonable doubt—to evaluate whether the prosecutor rebutted the presumption of prejudice.  Dkt. 1-2 at 25–31.  Specifically, Petitioner contends that:

> [T]o rebut the presumption [of prejudice], the prosecutor bears the burden of proving beyond a reasonable doubt that there is no substantial likelihood of bias by even a single juror. The California Court of Appeal's opposite conclusion was contrary to the clearly established Supreme Court precedent of In re Winship.

Id. at 30–31 (citations omitted).  However, the clearly established Supreme Court precedent that Petitioner cites to here, In re Winship, does not explicitly state that proof beyond a reasonable doubt is the standard of proof required to rebut the presumption of bias where juror misconduct has occurred.  Rather, as the California Court of Appeal explained in rejecting Petitioner's argument, In re Winship concerns the standard of proof required to prove all facts necessary to a conviction.  Johnson III, 2019 WL 2182940, at *5; Lodg. 27 at 11.  And, as the California Court of Appeal noted in Johnson III, "the trial court did not specify what standard of proof it was using" to determine any prejudice resulting from the juror misconduct here, meaning that Petitioner "can hardly show that [the trial court] used an erroneous [standard]." Johnson III, 2019 WL 2182940, at *5; Lodg. 27 at 11.  Similarly, because Petitioner has failed to provide any clearly established federal law to support his claim here, it can hardly be said that the state court's decision involved a misapplication of clearly established federal law.

Otherwise, Petitioner fails to identify any Supreme Court case holding that the standard of proof used to evaluate whether the prosecution has rebutted the presumption of prejudice that follows a juror misconduct claim is proof beyond a reasonable doubt.  Indeed, Petitioner has not cited to, nor has this Court found, clearly established federal law that support Petitioner's contention here.  Given that In

---

of proof necessary to rebut the presumption of prejudice from juror misconduct should be, would likely be more effective within a case concerning juror misconduct involving extrinsic, not intrinsic, evidence.

23

Re Winship does not explicitly support this proposition, and that the Ninth Circuit has not interpreted In Re Winship to support this proposition, it cannot be clearly established federal law within the definition of section 2254(d)(1).  Thus, Petitioner has not shown the state court's refusal to grant Petitioner a new trial based on juror misconduct relied upon a standard of proof for rebutting prejudice that was contrary to, or an unreasonable application of clearly established Supreme Court precedent.

## VII.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), a Certificate of Appealability may issue "if the applicant has made a substantial showing of the denial of a constitutional right."  The Supreme Court has held that this standard means a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.' "  Slack v. McDaniel, 529 U.S. 473, 483–84 (2000).  For the reasons stated above, the Court finds that Petitioner has not met the requisite standard and therefore recommends **DENYING** a Certificate of Appealability.

## VIII.

## RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the District Court issue an Order:

(1) accepting this Report and Recommendation; and

(2) **DENYING** and **DISMISSING** this action; and

(3) directing Judgment be entered dismissing this action with prejudice; and

(4) **DENYING** a Certificate of Appealability.

///

///

///

## IX.

## <u>NOTICE</u>

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number.  No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.

Dated:  November 5, 2021

HONORABLE MARGO A. ROCCONI
United States Magistrate Judge